UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

KEVIN M. BUSCH and
LESLIE J. BUSCH,                     )
                                     )
        Plaintiffs,                  )     Action No. 5:16-cv-210-JMH
                                     )
v.                                   )
                                     )     **MEMORANDUM OPINION**
WELLS FARGO HOME MORTGAGE            )        **AND ORDER**
INC. and WELLS FARGO BANK, N.A.      )
                                     )
        Defendants.                  )

****

## I. INTRODUCTION

This matter is before the Court upon the Motion to Dismiss [DE 9] filed by Defendants Wells Fargo Home Mortgage Inc. and Wells Fargo Bank, N.A (collectively, "Wells Fargo"). Plaintiffs Kevin M. Busch and Leslie J. Busch (collectively, "the Busches") have filed a Response in Opposition [DE 11] to the Motion, as well as their own Motion for Partial Summary Judgment [DE 12] on the issues of liability and attorney's fees. Both Motions are now fully briefed [DE 14, 17, 18] and ripe for the Court's review. For the reasons stated herein, Wells Fargo's Motion to Dismiss will be **GRANTED IN PART AND DENIED IN PART** and the Busches' Motion for Partial Summary Judgment will be **DENIED AS PREMATURE.**

1

## II. FACTUAL AND PROCEDURAL BACKGROUND

In March 2014, Wells Fargo Bank loaned the Busches $40,000 to finance the purchase of an investment property, located at 3570 Niagara Drive in Lexington, Kentucky. [DE 9-3]. The Busches, in return, executed a Promissory Note, secured by a Mortgage on the property, in favor of Wells Fargo Bank. [DE 9-2, 9-3]. In the Note, the Busches promised to repay the loan at an interest rate of 4.75% over a thirty year period by making monthly payments of principal, interest, and miscellaneous "other charges." [DE 9-3]. Wells Fargo Home Mortgage, Inc., a division of Wells Fargo Bank, serviced the loan. [DE 1-1, p. 3, ¶ 5].

The Note stated that these monthly payments, totaling $339.30, would be due on the first day of each month.[1] [DE 1-1 at 10, 9-3 at 1]. Wells Fargo would apply each monthly payment "as of its scheduled date … to interest before Principal."[2] If, at any time, Wells Fargo did not receive a full monthly payment within fifteen calendar days after the due date, it would assess a late

---

[1] The Busches owed $208.66 in principal and interest, plus $130.64 in escrow funds, bringing their total monthly payment to $339.30. [DE 1-1 at 10, 9-3 at 1].

[2] The Mortgage similarly stated that "payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due [for escrow items]." [DE 9-2 at 5]. It further provided that "[a]ny remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note." [*Id.*]. However, "[a]ny application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments." [*Id.*].

charge against the Busches, amounting to 5% of the overdue payment of principal and interest. [*Id.* at 2]. Failure to pay the full amount of each monthly payment on the due date would result in default. [*Id.*].

In the event of default, Wells Fargo had the right to notify the Busches that, if the overdue amount is not paid by a certain date, they may have to pay immediately the full amount of the principal that has not been paid and all interest owed on that amount. [*Id.*]. However, even if Wells Fargo decided not to take such steps upon default, it retained the right to do so if the Busches defaulted at a later time. [*Id.*].

In addition to the payment procedures described above, the Busches enjoyed the right to make prepayments on the principal. Specifically, the Note provided as follows:

4.   Borrower's Right to Prepay

I have the right to make payments of Principal at any time before they are due.  A payment of Principal only is known as a "Prepayment."   When I make a Prepayment, I will tell the Note Holder in writing that I am doing so.   I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge.   The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note.   However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note.

> If I make a partial Prepayment, there will be no changes
> in the due date or in the amount of my monthly payment
> unless the Note Holder agrees in writing to those
> changes.

[*Id.*].

In July 2015, the Busches mailed Wells Fargo separate checks to cover monthly payments on the Note through the end of 2016. [DE 1-1, p. 3, ¶ 6]. Wells Fargo misapplied those advance payments, and as a result, later returned them to Kevin Busch.[3] [*Id.*]. In October 2015, Plaintiffs paid $605 for an appraisal of the investment property, hoping to refinance the Note. [DE 1-1, p. 4, ¶ 10]. The Busches "were unable to refinance the Note at that time due to the misapplied payments by Wells Fargo which harmed their credit scores."[4] [*Id.*].

That same month, Kevin Busch mailed Wells Fargo a single check in the amount of $4,779.44. [DE 11-1]. At the bottom of this check, he wrote "14 payments per schedule 11/2015 through 12/2016." [*Id.*]. Although Wells Fargo applied $678.60 total to the November and December 2015 payments, it applied the remaining $4,100.84 to

---

[3] According to the Complaint, "[t]his was the second time that Wells Fargo had misapplied payments, the first occurring some years prior and being resolved over the phone." [DE 1-1, p. 3, ¶ 7].

[4] Although the Complaint is unclear on this point, the Busches were presumably unable to refinance in October 2015 because Wells Fargo misapplied the July 2015 payments. [DE 1-1, p. 4, ¶ 6-10]. After all, the Busches were not considered in default due to misapplication of the October 2015 payment until January 2016, as explained *infra*. [*Id.*].

the principal only, rather than twelve monthly payments of principal, interest, and escrow.  [DE 1-1, p. 3, ¶ 8].

The Busches, believing that Wells Fargo had applied the funds to cover twelve monthly payments, did not submit a periodic payment for January 2016.[5]  [DE 1-1, p. 4, ¶ 9].  As a result, Wells Fargo deemed the Busches delinquent on their Note payments, a determination that adversely affected their credit scores.  [*Id.* at p. 4, ¶ 10].  In February 2016, the Busches attempted to refinance their mortgage through People's Exchange Bank.  [*Id.* at p. 4, ¶ 11].  On February 19, 2016, the Bank denied the Busches' application, citing their latest credit report, which reflected their delinquent status on the Wells Fargo account.  [*Id.;* DE 1-1 at 11-14].

The Busches promptly retained counsel to address this issue.  [DEs 1-1 at 18-21; 11-4].  On February 24, 2016, counsel notified the three major credit reporting agencies ("CRAs") that the Busches' credit information was incorrect.  [DE 11-4].  She contacted Wells Fargo about the issue that same day.  [DE 1-1 at 18-21].  On March 2, 2016, counsel received a letter from Wells Fargo, stating in pertinent part:

---

[5] Although the Busches assumed that the payments had been processed according to their specifications, a statement dated 11/02/15 indicates that their next payment was due on 01/01/16.  [DE 1-1 at 10].

Thank you for contacting us.  We're writing to let you
know that we've received the inquiry you sent on behalf
of Kevin M. Busch and Leslie J. Busch.  We previously
received a similar inquiry and it's currently being
reviewed.

We expect to complete our research and provide you with
the results on or before March 14, 2016.  In the event
additional time is needed we will contact you.

[DE 11-5].

On March 17, 2016, the Busches' attorney again contacted Wells

Fargo about the issue, expressing the following concerns:

As you are aware, we had instituted an investigation
with the three major credit bureaus as to Wells Fargo
Bank's misapplication of funds to my clients' account.
I received today dispute resolutions from Equifax
indicating at page 10 of Kevin's credit report that Wells
Fargo is still reporting a delinquency from January
2016.  As we discussed on the phone, Wells Fargo is aware
that this information is incorrect.  Leslie's credit
report contains like information.  This is to request
that Wells Fargo correct said information consistent
with my previous conversations with you.  You have
indicated that Wells Fargo will correct all information
by March 30, 2016.

[DE 1-1 at 17].  Despite its assurances, Wells Fargo allegedly

"failed to correct the misapplied payment and continued to make

such inaccurate reports to the three major credit bureaus." [DE

1-1, p. 4, ¶ 13-14].

Finally, on May 3, 2016, Kati Negron, Executive Resolution

Specialist with Wells Fargo's Customer Care and Recovery Group,

sent counsel a letter, admitting that Wells Fargo had "inadvertently applied [the Busches' periodic payments] to principal and interest." [DE 1-1 at 22]. Negron stated that Wells Fargo had "reapplied the funds to future payments with an effective date of February 18, 2016," meaning that a monthly payment would not be due until January 1, 2017.[6] [*Id.*]. She also indicated that Wells Fargo had notified the three major credit bureaus of the situation and asked them to adjust the Busches' credit scores accordingly. [*Id.*]. She cautioned the Busches that it could take the CRAs up to 90 days to adjust their reports. [*Id.*]. Negron then informed the Busches that Wells Fargo had declined their request for payment of $8,905 to compensate them for the cost of the October 2015 appraisal, attorney's fees, lost wages, and emotional distress. [*Id.*].

On May 27, 2016, the Busches filed suit against Wells Fargo in Fayette Circuit Court, asserting the following claims: (1) violations of the Fair Credit Reporting Act; (2) breach of contract; (3) unjust enrichment; (4) negligence; (5) violations of the Kentucky Consumer Protection Act; (6) intentional and

_____

[6] In her letter, Negron stated that more than nine payments would have to be processed in "multiple transactions." [DE 1-1 at 22]. The Busches sent their check to Wells Fargo's lockbox location. [*Id.*]. Because the lockbox location is not a processing center, Wells Fargo's "representatives [we]re unable to process the multiple payment transaction as requested." [*Id.*]. Negron explained that, "[i]f the customer desires to continue to pay in this manner, we can accommodate that. We simply need to validate his request and we will add an indicator on the account to ensure the funds are processed according to their specifications." [*Id.*].

negligent infliction of emotional distress; (7) tortious interference with a contract or prospective business relationship; (8) punitive damages; and (9) attorney's fees. [DE 1-1]. Wells Fargo promptly filed a Notice of Removal, observing that this Court had federal question jurisdiction over the claim for violations of the Fair Credit Reporting Act and supplemental jurisdiction over the state law claims. [DE 1]. The parties then filed the instant Motion to Dismiss and Motion for Partial Summary Judgment. [DE 9, 12].

### III. ANALYSIS

*A. Motion to Dismiss*

    **1.   Standard of Review**[7]

A Complaint consists of a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly v. Bell Atl.*

---

[7] Although Wells Fargo styled its submission as a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Busches insist that the Motion must be treated as a Motion for Summary Judgment because Wells Fargo has presented matters outside the pleadings to the Court for consideration. *See* Fed. R. Civ. P. 12(d). Specifically, the Busches note that Wells Fargo attached copies of the Note and Mortgage to the Motion to Dismiss. However, the Sixth Circuit has held that "when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Commercial Money Ctr. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007). Such is the case here. Thus, the Court will evaluate Defendants' Motion to Dismiss under the Rule 12(b)(6) standard.

*Corp.*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 12(b)(6). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged." *Id.* "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## 2. Violations of the Fair Credit Reporting Act

The Fair Credit Reporting Act ("FCRA") "require[s] that credit reporting agencies [CRAs] adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer." 15 U.S.C. § 1681(b). Consistent with this goal, the FCRA imposes several duties on furnishers of information to CRAs. *See* 15 U.S.C. § 1681s-2.

This case focuses on the duties set forth in 15 U.S.C. § 1681s-2(b).[8] If a CRA receives notice of a dispute over information included in a credit report, it must notify the furnisher of the information within five days. *See* 15 U.S.C. §§ 1681s-2(b),

---

[8] Subsection (b) is not the only section of § 1681s-2 that regulates the conduct of furnishers of information. Subsection (a) sets forth a duty to provide accurate information to the CRAs. However, that section is only enforceable by government officials. *Morgan v. HSBC Mortg. Servs., Inc.*, 930 F. Supp. 2d 833, 837 (E.D. Ky. 2013) (citing 15 U.S.C. § 1681s-2(d)). Subsection (b), by contrast, "does allow a consumer to bring a private cause of action against a furnisher of credit information for either negligent, § 1681o, or willful, § 1681n, violations of the FCRA." *Stafford v. Cross Country Bank*, 262 F. Supp. 2d 776, 782 (W.D. Ky. 2003). Thus, § 1681s-2(b) is the focus of this Court's analysis.

1681i(a)(2).   The furnisher then has thirty days to investigate the disputed information, review relevant information provided by the CRAs, and report the result of its investigation to the CRAs. *See* 15 U.S.C. §§ 1681s-(2)(b)(1)(A)-(E) (identifying the duties of a furnisher of information upon notice of dispute), 1681i(a)(1) (establishing the thirty day investigation window).   Consumers may bring suit against furnishers of information for willful or negligent violations of these duties.   *See* 15 U.S.C. § 1681s-2(b) (citing §§ 1681n, 1681o).

The Complaint states that "Wells Fargo negligently or otherwise misapplied the Busches' payments, then furnished inaccurate and incorrect information to the [CRAs]."   [DE 1-1, p. 6, ¶ 31].   The Busches "reported Wells Fargo's error to the [CRAs] and further complied with all applicable statutory provisions." [*Id.* at p. 6, ¶ 32].   However, Wells Fargo continued to provide inaccurate information to the CRAs "after notice and confirmation of errors."   [*Id.* at p. 6, ¶ 31-32].

Wells Fargo contends that the Busches have failed to state a claim upon which relief may be granted because they did not allege that the CRAs notified Wells Fargo of the dispute over their credit report.   Absent such notice, Wells Fargo contends that its duties under § 1681s-2(b) could not have been triggered, and thus, it cannot be held liable for violations of those duties.   After all,

"a furnisher of credit information … has no responsibility to investigate a credit dispute until after it receives notice of a dispute from a consumer reporting agency." *Stafford*, 262 F. Supp. 2d at 784 (observing further that, "[u]nder the statutory language, notification from the consumer is not enough").

Although the Complaint contains no specific allegations that the CRAs notified Wells Fargo of the dispute, it does indicate that the Busches contacted the CRAs with concerns about their credit report, thereby requiring the CRAs to notify Wells Fargo of the dispute within five days. *See* 15 U.S.C. §§ 1681s-2(b), 1681i(a)(2). Moreover, correspondence between the parties indicates that Wells Fargo did communicate with the CRAs during that time period. [DE 1-1 at 17-24]. Thus, the Court may draw the reasonable inference that the CRAs notified Wells Fargo of the dispute, triggering its obligations under § 1681s-2(b) and making dismissal inappropriate at this juncture. *See Eddins v. Cenlar*, 964 F. Supp. 2d 843, 848 (W.D. Ky. 2013) (finding that, while the plaintiff had yet to provide "affirmative evidence" that the defendant, a furnisher of information, had been in contact with a credit reporting agency, correspondence attached to the complaint was sufficient to show that such notice was plausible).

Nevertheless, Wells Fargo insists that this claim must be dismissed because the Busches have not demonstrated that they

incurred actual damages.  This argument proceeds on the assumption that the Busches have only plead a claim for negligent violations of the FCRA.  *See Beaudry v. TeleCheck Servs., Inc.*, 579 F.3d 702, 705 (6th Cir. 2009) (noting that § 1681n "permits a negligence claimant to recover only actual damages, costs and attorney's fees").  Although the Busches do not confirm or dispute this characterization of their FCRA claim, the Court is not yet inclined to impose the limitations suggested by Wells Fargo.  After all, the Complaint states that Wells Fargo "negligently or otherwise" violated the FCRA, and requests punitive damages, which are only recoverable in connection with willful violations of the FCRA.  *Bach v. First Union Nat'l Bank*, 149 F. App'x 354, 364 (6th Cir. 2005).

However, even if the Court were to read the Busches' claim as one for negligent violations of the FCRA, dismissal would still be inappropriate.  Wells Fargo insists that the Busches incurred their damages, which consist of the cost of the home appraisal, the cost of hiring an attorney, lost wages, and emotional distress, well before its FCRA duties were triggered.  Thus, Wells Fargo concludes that the Busches' damages cannot be tied to a subsequent violation of those duties.  However, the Court sees no basis for concluding that the Busches suffered no emotional distress after Wells Fargo began investigating the dispute.  In fact, the inverse seems more

plausible.  After all, Wells Fargo received notice of the dispute between February 24, 2016 and March 2, 2016.  Although Wells Fargo promised to correct the information by March 30, 2016, further correspondence indicates that it did not rectify the situation until May 3, 2016.  Because "[a]ctual damages may 'include recovery for emotional distress and humiliation,'" the Court need not consider the viability of the Busches' other requested categories of damages at this juncture.  *Lewis v. Ohio Prof'l Elec. Network, LLC*, 248 F. Supp. 2d 693 (S.D. Ohio 2003).  The Busches have succeeded in stating a claim upon which relief may be granted.  Wells Fargo's Motion to Dismiss is denied as to the Busches' FCRA claim.

### 3.  Breach of Contract

"Under Kentucky law, a cause of action for breach of contract must state 'the contract, the breach and the facts which show the loss or damage by reason of the breach.'" [9]  *Shane v. Bunzl Distrib. USA, Inc.*, 200 F. App'x 397, 402 (6th Cir. 2006) (quoting *Fannin v. Commercial Credit Corp.*, 249 S.W.2d 826, 827 (Ky. 1952)).  "If a plaintiff fails to attach the alleged contract to the complaint, or proffer the language of the allegedly breached contractual

---

[9] "A federal court exercising supplemental jurisdiction over state law claims is bound to apply the law of the forum state to the same extent as if it were exercising its diversity jurisdiction." *Super Sulky, Inc. v. U.S. Trotting Ass'n*, 174 F.3d 733, 741 (6th Cir. 1999).  Thus, the Court will apply Kentucky law in evaluating each of the Busches' state law claims.

provision, then he fails to state a breach of contract claim." *Barbourville Diagnostic Imaging Ctr. v. Philips Med. Sys., Inc.*, Civ. A. No. 12-191-GFVT, 2013 WL 4459860, at *4 (E.D. Ky. Aug. 16, 2013) (citing *Northampton Rest. Grp., Inc. v. FirstMerit Bank, N.A.*, 492 F. App'x 518, 521-22 (6th Cir. 2012); *Shane*, 200 F. App'x at 401-02).

The Complaint alleges that Wells Fargo "breached the contract by misapplying payments and by providing inaccurate information to the three major credit bureaus concerning the Busches' account." [DE 1-1, p. 5, ¶ 18]. As evidence of a breach, the Busches simply rely on the fact that Wells Fargo later acknowledged their "mistake," applied the funds as the Busches intended, and notified the credit bureaus that the Busches were current on their payments. [DE 11 at 3-6].

While Wells Fargo concedes that it attempted to accommodate the Busches' payment preferences, it insists that this breach of contract claim fails because it had no contractual obligation to process the Busches' check as advance monthly payments of interest, principal, and escrow. [DE 9 at 6-9]. The Court, having reviewed the Promissory Note and Mortgage, agrees with Wells Fargo's position. While the Note and Mortgage grant the Busches the right to make prepayments on principal, so long as they were identified in writing, there is no contractual language indicating that they

14

enjoyed a similar right to make advance monthly payments.  There is certainly no suggestion that the Busches may use handwritten instructions to deviate from the payment procedures set forth in the Note and Mortgage.  Because the Busches did enjoy such rights, Wells Fargo did not have a contractual obligation to process the Busches' payments as instructed.  Absent such a contractual obligation, the Busches cannot sustain their breach of contract claim.

Similarly, the Note and Mortgage do not contain any provisions restricting or regulating Wells Fargo's communications with the CRAs.  Without such provisions, Wells Fargo's contact with the CRAs cannot amount to a breach of the Note and Mortgage.  Accordingly, the Busches' breach of contract claim must be dismissed.

### 4.  Unjust Enrichment

An unjust enrichment claim consists of three elements: "(1) benefit conferred upon defendant at plaintiff's expense; (2) a resulting appreciation of benefit by defendant; and (3) inequitable retention of benefit without payment for its value." *Jones v. Sparks*, 297 S.W.3d 73, 78 (Ky. Ct. App. 2009); *see also Javier Steel Corp. v. Cent. Bridge Co.*, 353 S.W.3d 356, 359 (Ky. Ct. App. 2011).  "The claim for unjust enrichment is a legal fiction created to permit recovery where equity says there should

15

be recovery, although there is no recovery in contract." *Holley Performance Prods., Inc. v. Keystone Auto. Operations, Inc.*, Civ. A. No. 1:09-cv-00053-TBR, 2009 WL 3613735, at *5 (W.D. Ky. Oct. 29, 2009) (citing *Perkins v. Daugherty*, 722 S.W.2d 907, 909 (Ky. Ct. App. 1987)).

Although Federal Rule of Civil Procedure 8(d)(3) allows parties to "state as many separate claims or defenses as it has, regardless of consistency," federal courts within the Sixth Circuit have dismissed unjust enrichment claims that were premised on the same facts underlying a breach of contract claim, relying on the Kentucky rule that "'[t]he doctrine of unjust enrichment has no application in a situation where there is an explicit contract which has been performed.'" *See, e.g., Poynter v. Ocwen Loan Servicing, LLC*, Civ. A. No. 3:13-cv-773-DJH-CHL, 2016 WL 5380926, at *6 (W.D. Ky. Sept. 23, 2016) (quoting *Codell Constr. Co. v. Kentucky*, 566 S.W.2d 161, 165 (Ky. Ct. App. 1977)).

The Complaint states that the Busches "tendered value and benefit to Wells Fargo in the form of early payment as permitted by the Note, and Wells Fargo has had the use of those funds, i.e., the time-value of money, since that time." [DE 1-1, p. 5, ¶ 21]. They further assert that "Wells Fargo failed to properly credit/apply the payments" and that "[i]t would be inequitable for Wells Fargo to retain the funds." [*Id.* at p. 5, ¶ 22-23].

16

Wells Fargo urges the Court to dismiss the Busches' unjust enrichment claim as duplicative of the breach of contract claim, relying heavily on the reasoning set forth in *Poynter*. By contrast, the Busches insist that their claim should be preserved because the Federal Rules of Civil Procedure allow them to plead claims in the alternative.

The Busches' argument suffers from a fatal flaw. Even if the Federal Rules of Civil Procedure permit alternative pleading, the Busches have failed to actually plead separate claims. Instead, they have simply repackaged their breach of contract claim. The Complaint does not indicate that the Busches had any extra-contractual dealings with Wells Fargo. Instead, it relies on the terms of the Note and Mortgage in stating the unjust enrichment claim, suggesting that these documents governed the parties' entire relationship. Because the Busches' unjust enrichment claim is predicated on the same facts underlying their breach of contract claim, it must be dismissed.

## 5.  Negligence

A negligence claim "requires proof that (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached the standard by which his or her duty is measured, and (3) consequent injury." *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88 (Ky. 2003). As the Court of Appeals of Kentucky has observed:

> The failure to perform a contractual obligation typically does not give rise to a cause of action in tort … However, if a plaintiff can establish the existence of an independent legal duty, he may maintain an action in tort even though the acts complained of also constitute a breach of contract.

*Mims v. Western-Southern Agency, Inc.*, 226 S.W.3d 833, 836 (Ct. App. Ky. 2007) (quoting *Jones v. Hartford Life and Accident Ins. Co.*, 443 F. Supp. 2d 3, 5 (D.D.C. 2006)).

The Complaint simply asserts that Wells Fargo owed the Busches a duty of care and "breached its duty by failing to properly apply payments to the Note, and by further furnishing inaccurate information to the three major credit bureaus." [DE 1-1, p. 6, ¶ 26-27].

Wells Fargo contends that this claim must be dismissed because it only owed the Busches contractual duties, as set forth in the Note and Mortgage. Because Wells Fargo did not owe the Busches an independent duty, it concludes that the Busches cannot sustain this negligence claim. In response, the Busches insist that Wells Fargo did owe them an independent duty, noting that Kentucky law requires banks to act in good faith and exercise ordinary care in the handling of customer accounts. *Christie v. First Am. Bank*, 908 S.W.2d 679 (Ky. Ct. App. 1995).

Although *Christie* does acknowledge the existence of such duties in handling customer accounts, the court ultimately holds that the duties do not apply to the calling of demand notes and declined to discuss "the issue of whether the duty of good faith applies to other types of loan transactions." *Id.* Thus, *Christie* does not decide whether the duties of good faith and ordinary care apply to mortgage transactions or credit reporting procedures. Because the Busches have not offered any other cases to establish that Wells Fargo owed them any duties independent of the Note and Mortgage, their breach of contract claim must be dismissed.[10]

**6.   Violations of the Kentucky Consumer Protection Act**

The Kentucky Consumer Protection Act ("KCPA") protects "[a]ny person who purchases or leases goods or services primarily for personal, family, or household purposes" from "unfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce."  Ky. Rev. Stat. Ann. § 367.220(1), 367.170. The Court of Appeals of Kentucky has held that the KCPA does not apply to real estate transactions by an individual homeowner. *Craig v. Keene*, 32 S.W.3d 90, 91 (Ky. 2000).  Moreover, it has defined the term "real estate transaction" as "encompass[ing] any transaction touching upon or involving real estate." *Todd v. Ky.*

---

[10] Even if such a duty existed, the Busches' negligence claim would likely be preempted by the FCRA.  *See Morgan*, 930 F. Supp. 2d at 838.

*Heartland Mortg., Inc.*, 2003 WL 21770805, at *3 (Ky. Ct. App. Aug. 1, 2003).

The Complaint simply alleges that "Wells Fargo's actions as heretofore described constitute violations of the KCPA." [DE 1-1, p. 7, ¶ 36]. Wells Fargo, relying on *Craig* and *Todd*, insists that its business with the Busches qualifies as a "real estate transaction." Thus, it concludes that its actions cannot amount to KCPA violations. Although the Busches argue that KRS § 367.320 evinces a contrary intent to include real estate transactions in the KCPA, the provisions of that statute are limited to servicers of high-cost home loans. Nothing in the Complaint suggests that the Busches' loan qualifies as such. Their KCPA claim must be dismissed.

### 7. Intentional and Negligent Infliction of Emotional Distress

Under Kentucky law, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *See* Restatement (Second) of Torts 46. Outrageous conduct "is a deviation from all reasonable bounds of decency and is utterly intolerable in a civilized community." *Craft v. Rice*, 671 S.W.2d 247, 250-51 (Ky. 1984).

In this case, the Complaint merely cites the elements of an intentional infliction of emotional distress claim and generally alleges that Wells Fargo acted outrageously in misapplying their payment and inaccurately reporting their credit score to the CRAs. [DE 1-1, p. 7, ¶ 38-40]. "[S]uch conduct is certainly not desirable, but it does not deviate from all reasonable bounds of decency, and is a far cry for outrage." *Morgan*, 930 F. Supp. 2d at 840. Moreover, there is no suggestion that Wells Fargo undertook such conduct with the intent to cause severe emotional distress. *See, e.g., Ramey v. St. Claire Med. Ctr.*, No. 2003-CA-000476-MR, 2004 WL 2481393, at *5 (Ky. Ct. App. Nov. 5, 2004) (dismissing an intentional infliction of emotional distress claim based in part on a lack of evidence that the defendant's employees intended to cause emotional distress to the plaintiff). Thus, the Court concludes that the Busches have failed to state a claim for intentional infliction of emotional distress.

A claim for negligent infliction of emotional distress is "analyzed in accordance with common law negligence: (1) the defendant must have owed a duty of care to the plaintiff; (2) which it breached; (3) legally causing; (4) injury to the plaintiff." *Jackson v. Steele*, Civ. A. No. 11-72-DLB-EBA, 2014 WL 2801337, at *12 (E.D. Ky. June 19, 2014) (citing *Osborne v. Keeney*, 399 S.W.3d 1, 17 (Ky. 2012)). Because the Court has already found that

Wells Fargo did not owe the Busches any duties independent of the Note and Mortgage, the Busches cannot sustain their claim for negligent infliction of emotional distress. Dismissal is therefore appropriate as to both claims.

**8. Tortious Interference with a Contract or Prospective Business Relationship**

Tortious interference with a contract consists of the following elements: "(1) the existence of a contract; (2) that the defendant had knowledge of the contract; (3) that the defendant intended to cause a breach of that contract; (4) that the defendant's actions did indeed cause a breach; (5) that damages resulted to the plaintiff; and (6) that the defendant had no privilege or justification to excuse its conduct." *Snow Pallet, Inc. v. Monticello Banking Co.*, 367 S.W.3d 1, 5-6 (Ky Ct. App. 2012).

By contrast, "[t]ortious interference with a prospective business advantage does not require the existence of a contract." *Id.* at 6. It simply requires proof of the following elements: (1) the existence of a valid business relationship or expectancy; (2) that the defendant was aware of this relationship or expectancy; (3) that the defendant intentionally interfered; (4) that the motive behind the interference was improper; (5) causation; and (6) special damages." *Id.*

The Busches allege that they "attempted to refinance the Note and were denied refinancing with another lender due to the inaccurate, untruthful credit reporting by Wells Fargo." [DE 1-1, p. 8, ¶ 43].   They further state that Wells Fargo's actions "were intentional, wrongful, improper, and constitute tortious interference with a contract or prospective business advantage." [Id. at p. 8, ¶ 44].

While the Busches insist that these allegations are sufficient to satisfy Rule 8's liberal pleading standard, Wells Fargo argues that this claim must be dismissed because it consists of nothing more than threadbare conclusions.   Having reviewed the allegations set forth in the Complaint, the Court agrees with Wells Fargo.   The conduct described in the Complaint does not suggest that Wells Fargo knew about the Busches' efforts to refinance or intentionally interfered with those efforts.   Accordingly, these claims must be dismissed.

### 9.   Punitive Damages and Attorney's Fees

The FCRA allows a successful claimant to recover attorney's fees in cases of negligent or willful noncompliance.   *Beaudry*, 579 F.3d at 705.   While punitive damages may also be awarded under the FCRA, they are limited to cases of willful noncompliance.   *Bach*, 149 F. App'x at 364.

In this case, the Court already found that the Busches have stated a claim for FCRA violations.  It also declined to decide whether that claim is essentially one for negligent or willful violations of the FCRA.  Given the viability of this claim, dismissal of the Busches' request for attorney's fees and punitive damages is inappropriate at this juncture.

## B.   *Motion for Partial Summary Judgment*

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Although a party may move for summary judgment at any time, the opposing party may ask the Court to defer or deny the Motion, allow time for discovery, or issue any other appropriate order.  Fed. R. Civ. P. 56(d)(1)-(3).  In order to succeed on such a motion, the opposing party must "show[] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its position." *Id.*

The Busches argue that summary judgment is appropriate because "[i]t is undisputed that the violation at issue took months to remedy, more than the 30-day "investigation" period provided for under the FCRA and only because of assistance of a lawyer at significant expense." [DE 12-1, p. 2, ¶ 5].  They further assert that "[i]t is undisputed that the remaining elements of an FCRA

24

claim are met" and that "[t]he only element that Defendants have contested is whether they received notice from the credit bureaus of the violation." [*Id.* at p. 2, 6]. Because Defendants attempted to remedy the situation, the Busches conclude that they received notice of the dispute, thus establishing that element.

In response, Wells Fargo contends that summary judgment is premature and that discovery is needed to defend the remaining FCRA claim. [DE 17]. In support of this assertion, Wells Fargo's attorney has filed a Rule 56(d) affidavit, indicating that Wells Fargo intends to serve subpoenas on the credit reporting agencies to determine how they processed information, what reports they made, how the Busches communicated with them, when they received updated information from Wells Fargo, and when they actually updated that information. [DE 17-1, p. 3, ¶ 6].

Having reviewed the parties' submissions, the Court is inclined to agree with Wells Fargo. Although the record, as developed, indicates that the credit reporting agencies likely notified Wells Fargo of the dispute and that Wells Fargo eventually remedied the situation, it remains unclear whether any of Wells Fargo's actions during that time period amounted to violations of the FCRA's investigation and reporting requirements. Thus, the Court finds that there are genuine issues of material fact requiring discovery, and thus, summary judgment is premature at

this juncture.  Because the Busches' request for attorney's fees is tied to the outcome of their FCRA claim, summary judgment on that issue must also be denied.

### III. CONCLUSION

Accordingly, for the reasons stated herein,

**IT IS ORDERED** as follows:

(1)  Defendants' Motion to Dismiss [DE 9] is hereby **DENIED** as to Counts IV (Fair Credit Reporting Act Violation), VII (Punitive Damages), and IX (Attorney's Fees) and **GRANTED** as to Counts I (Breach of Contract), II (Unjust Enrichment), III (Negligence), V (Kentucky Consumer Protection Act Violation), VI (Intentional and Negligent Infliction of Emotional Distress), and VII (Tortious Interference with Contract or Prospective Business Relationship);

(2)  Plaintiffs' Motion for Summary Judgment on Liability and Attorney's Fees [DE 12] is hereby **DENIED AS PREMATURE**; and

(3)  Defendants shall file an Answer to the remaining allegations in the Complaint within **ten (10) days of the date of entry of this Order**.

This the 9th day of January, 2017.

 Signed By:

**_Joseph M. Hood_**

**Senior U.S. District Judge**